# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**LYDIA M. MARTIN**                                                                                                     **PLAINTIFF**

**v.**                                      **Case No. 4:13-cv-0443 KGB**

**ARKANSAS DEPARTMENT OF HEALTH**                              **DEFENDANT**

## OPINION AND ORDER

On September 23, 2015, the Court issued an Order granting in part, denying in part, and taking under advisement in part, defendant Arkansas Department of Health's ("ADH") motion to dismiss and motion for summary judgment (Dkt. No. 36). The Court dismissed all of plaintiff Lydia M. Martin's claims other than her claim of retaliation under Title VII (Dkt. No. 36, at 23). The Court took under advisement ADH's motion for summary judgment on Ms. Martin's retaliation claim, pending resolution of a dispute between Ms. Martin and her former counsel in this matter, and pending a determination as to whether Ms. Martin should be permitted to respond further to ADH's motion for summary judgment after that dispute was resolved.

After holding a hearing on these issues, the Court issued another Order finding that, for the purposes of Ms. Martin's ability to respond to ADH's motion for summary judgment, her dispute with her former counsel had been resolved (Dkt. No. 45, at 3). The Court also provided Ms. Martin with the opportunity to file a supplemental response to ADH's motion for summary judgment. Ms. Martin filed her supplemental response along with additional information in support of her supplemental response on February 17, 2016 (Dkt. Nos. 48, 49). After reviewing the materials submitted by Ms. Martin, the Court finds that ADH is entitled to summary judgment on Ms. Martin's remaining retaliation claim.

I.      **Background**

A comprehensive recitation of the factual background of this case is provided in the Court's earlier Order on ADH's motion to dismiss and motion for summary judgment (Dkt. No. 36, at 4-8). For the purposes of Ms. Martin's retaliation claim, these are the relevant alleged facts. Ms. Martin began working for ADH as a Licensed Practical Nurse in 2007 (Dkt. No. 16, ¶ 1). During her time as an ADH employee, Ms. Martin filed several employment complaints, both internally and with the Equal Employment Opportunity Commission ("EEOC"). She was disciplined by ADH on at least three occasions.

In June or July of 2009, Ms. Martin filed a grievance arising out of the reallocation of her position from the Southwest Health Unit to the Pulaski County Health Unit, as well as other concerns she had related to her co-workers and the supervisor of the Southwest Health Unit (Dkt. No. 2, at 8; No. 49, at 20-22). She filed another grievance on September 13, 2011, regarding the actions of two ADH employees: Veronica Dawson-McDaniel and Dr. Zenobia Harris (Dkt. No. 49, at 10-11). On February 2, 2012, Ms. Martin received a three day suspension (Dkt. No. 49, at 19). On April 24, 2012, she received a written warning (Dkt. No. 49, at 19).[1] On May 22, 2012, Ms. Martin filed an EEOC charge, in which she claimed to be the victim of race discrimination and retaliation (Dkt. No. 49, at 3). On February 21, 2013, she filed another grievance regarding the actions of her supervisor, Amanika Duncan (Dkt. No. 49, at 8-9). That same day, Ms. Martin received a written warning from Ms. Duncan (Dkt. No. 49, at 19). The record does not clearly indicate if Ms. Martin filed her grievance before or after receiving the written warning. Finally, on April 25, 2013, Ms. Martin filed a second EEOC charge, alleging that she received a write up

---

[1] In an attachment to her complaint, Ms. Martin alleges that on May 15, 2012, she received notice that another disciplinary action was pending and an investigation was in progress (Dkt. No. 2, at 8). This allegation does not appear to be supported by evidence in the materials submitted by Ms. Martin.

because of her disability, her race, and in retaliation for filing a previous grievance and EEOC charge (Dkt. No. 49, at 12).

On June 25, 2013, two months after Ms. Martin filed her final complaint against ADH, she resigned from her job (Dkt. No. 16, ¶ 3). Ms. Martin alleges that her resignation was forced "due to the severity of the retaliation, discrimination, and harassment received by the plaintiff from supervisors, senior managements [sic], and co-workers" (Dkt. No. 48, at 1).

## II. Failure To Exhaust

Ms. Martin's sole remaining claim against ADH is for retaliation under Title VII. As a preliminary matter, the Court notes that Ms. Martin failed to exhaust her administrative remedies prior to bringing her retaliation claim, if her retaliation claim is premised on her alleged discharge. "A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court. A claimant must first timely file an administrative charge with the EEOC." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (citing 42 U.S.C. § 2000e-5(e)). The statute establishing the exhaustion requirement provides that:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter.

42 U.S.C. § 2000e–5(e)(1). As the United States Court of Appeals for the Eighth Circuit has noted, "[t]he object of the exhaustion requirement is 'the alleged unlawful employment practice.'" *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). For the purposes of 42 U.S.C. § 2000e-5(e), the term practice "does not connote 'an ongoing violation that can endure or recur over a period of time,'" and it "does not convert 'related discrete acts into a single unlawful practice for the purposes of timely filing'" charges with the EEOC. *Id.*

3

(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002)).  Recognizing that the exhaustion statute provides that an EEOC charge must be filed "within one hundred and eighty days after *the* alleged unlawful employment practice occurred," the court of appeals found that to exhaust properly their administrative remedies, "the complainant must file a charge with respect to *each* alleged unlawful employment practice."  *Id.* (emphasis added).

As the Court noted in its Order on ADH's motion to dismiss, Ms. Martin's retaliation claim is based on her allegation that she was forced to resign because she filed internal grievances and charges with the EEOC (Dkt. No. 36, at 18-20).  Ms. Martin retired on June 25, 2013 (Dkt. No. 16, ¶ 3).  Her most recent EEOC charge was filed on April 25, 2013, two months prior to her resignation (Dkt. No. 49, at 12).  She never filed an EEOC charge after she was allegedly forced to resign.  Therefore, she failed to exhaust her remedies regarding her remaining retaliation claim.[2]

While the Court finds that Ms. Martin failed to exhaust her administrative remedies prior to filing this action, the Court recognizes that exhaustion does not appear to be a jurisdictional requirement and may be waivable.  *See Davis v. Kansas City Housing Authority*, 822 F. Supp. 609, 618 (W.D. Mo. 1993) (concluding that the timely filing of an EEOC charge is not jurisdictional).  ADH did not raise the exhaustion issue in its motion to dismiss and motion for summary judgment (Dkt. No. 14).  ADH did assert that, although Ms. Martin alleged retaliation in her EEOC charge, she did not assert such a claim in her complaint and, therefore, abandoned it (Dkt. No. 15, at 5).  Given the parties' filings and the record evidence before the Court, the Court

---

[2] To the extent Ms. Martin basis her claim of retaliation on allegations regarding ADH's behavior prior to the 2013 EEOC charge, she fails to state a claim, as she failed to plead sufficient facts to support, and this summary judgment record does not support, a plausible claim that she suffered a materially adverse employment action prior to her allegedly forced retirement, as explained *infra*.

4

will proceed to examine the merits and determine whether ADH is entitled to summary judgment on Ms. Martin's retaliation claim.

### III.     Standard For Motion For Summary Judgment

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### IV.     Discussion

"Title VII makes it 'unlawful . . . for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"  *Brown v. City of Jacksonville*, 711

F.3d 883, 892 (8th Cir. 2013) (quoting 42 U.S.C. § 2000e–3(a)).  "To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework."  *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).  Evidence of a Title VII violation is direct if it "establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (quoting *Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64, 66 (8th Cir.1997)).  Ms. Martin has not presented direct evidence of a Title VII violation; therefore, the Court will apply the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas*.

Under the *McDonnell Douglas* framework, Ms. Martin bears the initial burden of establishing a *prima facie* case of retaliation by showing that:  (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct.  *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011).  "[T]he threshold of proof necessary to establish a *prima facie* case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998).  If Ms. Martin meets her initial burden, the burden shifts to ADH to "articulate a legitimate, non-retaliatory reason for its action."  *Id.*  If ADH successfully meets its burden, the burden shifts back to Ms. Martin to "present evidence that (1) creates a question of fact as to whether [ADH's] proffered reason was pretextual and (2) creates a reasonable inference that [ADH] acted in retaliation."  *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014).  The Supreme Court held retaliation claims brought under Title VII must be proved according to traditional principles of but-for causation.  *Univ. of*

6

*Tex. Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S.Ct. 2517, 2534 (2013); *Musolf v. J.C. Penney Company*, 773 F.3d 916, 919 (8th Cir. 2014).

In her information on motion for summary judgment, Ms. Martin provided evidence that she filed grievances and EEOC charges against ADH on multiple occasions (Dkt. No. 49, at 3, 8, 9, 10, 11, 12, 20, 21, 22). Filing grievances and EEOC charges constitutes protected activity for the purposes of a Title VII retaliation claim. *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009). Therefore, Ms. Martin has established that she engaged in statutorily protected activity.

It is less clear as to whether Ms. Martin has met her burden of establishing the she suffered a materially adverse employment action. For the purposes of a Title VII retaliation claim, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (quoting *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir.2007)). The alleged action must be sufficiently serious, as "'[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not' rise to the level of an adverse employment action." *Id.* at 766-67 (quoting *Clegg,* 496 F.3d at 926); *see also Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) ("A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status-a reduction in title, salary, or benefits.") (quoting *Wenzel v. Missouri–American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005)). The Court can view less serious actions collectively and find that an adverse

7

employment action occurred but only if the cumulative effect of these actions caused the employee to suffer serious employment consequences. *Id.* at 767.

Ms. Martin alleges that she suffered "retaliation" throughout her career at ADH. However, until her allegedly forced resignation, she offers no evidence that any of the "retaliatory" acts resulted in a reduction of her title, salary, or benefits. For example, she claims that she was transferred to a different department at ADH after she filed an internal grievance, but she fails to demonstrate that the transfer resulted in her making less money or damaged her future career prospects (Dkt. No. 48, at 4); *see Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997) ("A transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action, otherwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit."). Ms. Martin also alleges that she was written up for a disciplinary violation (Dkt. No. 48, at 6). She claims that this was retaliatory because other nurses that had participated in the same conduct, but who had not previously filed grievances, were not written up. Again, Ms. Martin fails to demonstrate how being written up constitutes an adverse employment action. There is no indication that she suffered a material change in employment status as a result of being written up. *See Warr v. Hagel*, 14 F. Supp. 3d 1244, 1252 (E.D. Mo. 2014) (finding that an oral admonishment that did not result in a reduction of salary, title, or benefits did not constitute a materially adverse employment action).

Ms. Martin's resignation, if truly forced, would constitute a materially adverse employment action because it would be, in effect, a termination. The most compelling evidence supporting Ms. Martin's claim that she was forced to resign is an ADH form dated July 25, 2013, which indicates that Ms. Martin did not resign from her position but was terminated (Dkt. No.

49, at 24).  Ms. Martin also provided her letter of resignation as an attachment to her complaint, in which she claimed that her resignation was forced (Dkt. No. 2, at 24).  Finally, Ms. Martin argues that she would not have voluntarily resigned because she has invested a number of years at ADH towards her retirement, she relied on ADH's health and life insurance benefits, and she had invested in remaining an employee with ADH by enrolling in college (Dkt. No. 48, at 3).  Ms. Martin provides the Court with proof of her enrollment at Pulaski Technical College during her employment with ADH (Dkt. No. 49, at 33).  After reviewing this evidence, the Court finds that, for the purposes of meeting the minimal burden at the *prima facie* case stage, Ms. Martin has presented sufficient evidence to support her claim that she suffered a materially adverse employment action.

To make a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Ms. Martin also must establish that her purportedly forced resignation was causally connected to her filing the grievances and EEOC charges.  To establish this final element of her *prima facie* case, Ms. Martin relies solely on the temporal proximity between when she filed grievances or EEOC charges and when she was disciplined.  She claims that the evidence she has provided to the Court establishes a timeline showing that the discipline and harassment she received from her superiors was in response to her filing grievances and EEOC charges (Dkt. No. 48, at 2; 6; 8).

In certain circumstances, the temporal proximity between protected activity and a materially adverse employment action can be sufficient to establish causation for a *prima facie* retaliation case.  *Gibson v. Geithner*, 776 F.3d 536, 541 (8th Cir. 2015).  However, a plaintiff generally must show more than temporal proximity alone.  *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014).  One way that a plaintiff can "supply the extra quantum of evidence to satisfy the causation requirement" is to show a "pattern of adverse actions that occur just after protected

9

activity." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Absent a pattern, a plaintiff can still establish causation based on temporal proximity, but "[t]emporal proximity between the protected conduct and adverse action 'must be very close' for timing alone to be sufficient." *Lors*, 746 F.3d at 865 (quoting *Sisk v. Picture People, Inc.,* 669 F.3d 896, 900 (8th Cir.2012)). The Eighth Circuit Court of Appeals has not definitely established how close in proximity the events must be, but it has found that "[m]ore than two months is too long to support a finding of causation without something more." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 901 (8th Cir. 2012).

Ms. Martin claims that her evidence establishes a pattern of adverse actions occurring shortly after protected activity. The Court disagrees. Based on the record before the Court, Ms. Martin was disciplined four times: (1) a three day suspension on February 2, 2012; (2) a written warning on April 24, 2012; (3) written warning on February 21, 2013; and (4) her forced retirement on June 25, 2013 (Dkt. No. 49, at 19; No. 16, ¶ 3). Of these four actions, only one was in close temporal proximity with a statutorily protected activity:[3] on February 21, 2013, Ms. Martin both received a written warning from and filed a grievance against her supervisor, Ms. Duncan (Dkt. No. 49, at 8-9). However, even in this isolated instance, any implication that Ms. Martin's grievance caused the written warning is undermined by two facts. Nothing in the record indicates that Ms. Duncan was aware that a grievance had been filed when she gave Ms. Martin a written warning. More importantly, the record is unclear as to whether Ms. Martin filed her grievance before or after receiving the written warning. Therefore, the Court finds that on

---

[3] Ms. Martin filed a grievance on September 13, 2011, almost 5 months prior to receiving a three day suspension on February 2, 2012, and more than 7 months prior to receiving a written warning on April 24, 2012. She filed charges with the EEOC on April 25, 2013, two months prior to being forced to resign on June 25, 2013.

the record evidence Ms. Martin has not established that there was a pattern of adverse actions occurring just after protected activity.

Without a pattern, Ms. Martin relies solely on the temporal proximity between her forced resignation and her most recent statutorily protected activity to establish the causation element of her *prima facie* case. Ms. Martin resigned on June 25, 2013. She filed charges with the EEOC on April 25, 2013, exactly two months prior. The Court finds that Ms. Martin failed to establish that her allegedly forced resignation was caused by her filing of the EEOC charge. On the record evidence before the Court, without more, a temporal proximity of two months is likely too attenuated to support a finding of causation. *Sisk*, 669 F.3d at 901. Furthermore, Ms. Martin claims that ADH's allegedly "retaliatory" behavior persisted throughout almost her entire employment, from at least 2009, when she first filed a grievance, through her forced retirement. The behavior Ms. Martin complains of appears to be completely independent of her statutorily protected behavior. For these reasons, the Court finds that Ms. Martin fails to make a *prima facie* case of retaliation, and ADH is entitled to summary judgment. *Shirrell*, 793 F.3d at 887.

V.  **Conclusion**

ADH's motion for summary judgment as to Ms. Martin's retaliation claim is granted (Dkt. No. 36). As this was Ms. Martin's only remaining claim, her action is dismissed with prejudice.

So ordered this 14th day of September, 2016.

Kristine G. Baker
United States District Judge